UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

       -against-                                        **ATTORNEY'S AFFIDAVIT**
                                                              07 Cr 1041 (LTS)

YUSEF GREEN,

       Defendant.
------------------------------------------------------------x

STATE OF NEW YORK     )
                                   ) ss.:
COUNTY OF NEW YORK  )

       JOYCE C. LONDON, being duly sworn, hereby deposes and says:

1. I am an attorney duly admitted to practice law before the bars of this Court and this State.

2. I, together with Valerie Van Leer Greenberg, Esq. as co-counsel, represent the defendant Yusef Green in the above-captioned matter.

3. The source of your deponent's information and the basis for her belief are the Court records, the records on file in my office and conversations had with the defendant and others in this case. All matters about which your deponent lacks personal knowledge are asserted herein upon information and belief.

4. I submit this affidavit in support of defendant's motions for (i) an order pursuant to Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure suppressing any and all evidence seized as a result of the search of Yusef Green's car on the grounds that there was no reasonable suspicion to stop Mr. Green; (ii) an order pursuant to Rule 16(a)(C)(1) of the Federal Rules of Criminal Procedure directing the government to disclose any and all prior immoral or illegal acts and/or criminal convictions of the defendant which the government would seek to introduce against the defendant at least thirty days prior to trial

        so that the defendant may move to preclude the introduction of such evidence in accordance with Rules 403 and 404(b) of the Federal Rules of Evidence; and (iii) an order permitting defendant Green to make such other and further motions as may be appropriate and necessary.

5.      Under Indictment NO. 07 Cr 1041 (LTS), the grand jury of the Southern District of New York has charged Yusef Green in Counts One and Two of a two-count indictment. Count One charges that on or about March 15, 2007, the defendant distributed and possessed with intent to distribute a controlled substance, to wit, approximately 1,400 80- milligram tablets of Oxycondone, commonly known as "Oxycontin", a Schedule II controlled substance in violation of Title 21, United States Code, Sections 812, 841((a)(1), 841(b)(1)(C) and Title 18 United States Code, Section 2. Count Two charges that on or about March 15, 2007, the defendant distributed and possessed with intent to distribute a controlled substance, to wit approximately 1,300 4-milligram tablets of Hydromorphone, commonly known as "Dilaudid", a Schedule II controlled substance in violation of Title 21, United States Code, Sections 812, 841((a)(1), 841(b)(1)(C) and Title 18 United States Code, Section 2. The Indictment also contains a forfeiture allegation.

## SUPPRESSION OF EVIDENCE

6.      Pursuant to Rule 12 (b)(3)(A) of the Federal Rules of Criminal Procedure, the Court is asked to suppress any and all evidence seized from the search of defendant Green's car on the grounds that there was no reasonable suspicion for the stop of the vehicle.

7.      The Complaint claims that early on the morning of March 15, 2007, two police officers (Officer 1 and Officer 2) together with another police officer were on duty in an unmarked police vehicle that was parked in the vicinity of Sin City, a strip club located at

2520 Park Avenue in the Bronx, New York. At or around 4:30 a.m. on March 15, Officer 1 and Officer 2 observed a Mercedes Benz sedan double-parked on the street outside of Sin City. After remaining there for approximately 10 minutes, the Mercedes abruptly drove off at a high rate of speed, making a wide, high-speed, right-hand turn onto 138th Street. The police officers followed the Mercedes in their vehicle and activated the vehicle's lights and siren. After traveling approximately two to three more blocks, the Mercedes came to a stop in the middle of the street. The police officers got out of their vehicle, approached the Mercedes, and Officer 1 and Officer 2 spoke to the driver who was identified as Yusef Green, the defendant. Officer 1 and Officer 2 observed that Green had bloodshot eyes, slurred his speech and smelled of alcohol. Upon being directed to get out of the Mercedes, Green also appeared to be unsteady on his feet and needed to be assisted by Officer 1. At that point Green was placed under arrest for driving under the influence of alcohol and was put in the police officers' vehicle for transport by Officer 1 and the third officer to the 40th Precinct. Following the arrest of Green, Officer 2 performed a brief search of the Mercedes. During the search Officer 2 observed (I) a large bottle containing what was later determined to be approximately 209 Oxycontin pills behind the driver's seat and (ii) a large quantity of cash, later determined to total approximately $36,600, in rubber-banded bundles in the rear driver's side storage compartment. Officer 2 then drove the Mercedes to the 40th Precinct, where he continued to search the Mercedes. During the inventory search of the Mercedes, Officer 2 found among other things: (I) a wallet that contained photographic identification cards in different names bearing the likeness of Green; (ii) a prescription for Oxycontin in a name other than Green's; and (iii) receipts for Oxycontin and Dilaudid prescriptions in various

names, including one that corresponded to one of the above-described photographic identification cards.   <u>See</u> Federal Complaint ¶¶ 5 (a) - (h).  A copy of the Federal Complaint is attached hereto as Exhibit A.

8. On the other hand, an FBI 302 provided by the Government in discovery, relates the events of the morning of March 15, 2007 as follows:   an officer posted in the vicinity of the parking lot of Sin City, a club located at 2520 Park Avenue, Bronx New York, observed a red Mercedes-Benz blocking vehicular traffic in front of Sin City.  The vehicle then departed the location and turned right on 138th Street.  The vehicle was pulled over and officers approached the Mercedes Benz.  Upon the officers speaking with the driver, REDACTED observed that the driver, later determined to be Yusef Green, had blood shot eyes and slurred speech.  Green was then arrested for driving under the influence.  A copy of this FBI 302 Report is attached hereto as Exhibit B.

9. Based on the version of events detailed in the FBI 302, it appears that the police officers did not have the requisite reasonable suspicion to stop the vehicle driven by defendant Green.

10. The Bronx Supreme Court Complaint avers that Yusef Green was "about to be summoned . . . when he took off."  <u>See</u> Bronx Supreme Court Complaint at 2.  A copy of this Bronx Supreme Court Complaint is attached hereto as Exhibit C.

11. The events as set forth by defendant Yusef Green in his affidavit further dispute the purported facts set forth in both the Federal Complaint, the FBI Form 302 and the Bronx Supreme Court Complaint.  A copy of defendant Green's Affidavit is attached hereto as Exhibit D.

12. According to Green, on the night in question, he exited the Bruckner Expressway in the

Bronx and drove along the service road and various local streets intending to get back on the Bruckner Expressway after it became the Major Deegan Expressway. En route, he turned onto the street where Sin City is located. He drove past Sin City to the end of the block and stopped at the stop sign, intending to turn left and get back on the Major Deegan Expressway. While stopped at the stop sign, he noticed the flashing lights and the sirens of a police vehicle coming up behind him so he turned right and pulled over. When the officers approached his car, he asked why he was being stopped and was told that he had stopped for too long a period at the stop sign.

## PRIOR BAD ACTS AND/OR CRIMINAL CONVICTIONS

13. Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, the Court is asked to direct the government to disclose any and all prior immoral or illegal acts and/or criminal convictions of the defendant which the government would seek to introduce against the defendant at least thirty (30) days prior to trial so that the defendant may move to preclude the introduction of such evidence in accordance with Rules 403 and 404(b) of the Federal Rules of Evidence.

14. In discovery provided pursuant to Rule 16 of the Federal Rules of Criminal Procedure, namely Mr. Green's rap sheet, there is a notation indicting that Mr. Green has a prior conviction for possession of a firearm by a convicted felon. Upon information and belief, this prior conviction record is erroneous, as Mr Green has never received a conviction for possession of a firearm by a convicted felon.

15. The discovery provided to date by the Government contains documentation concerning purported conduct related to the instant case.

16. No other information regarding prior immoral or illegal acts or criminal convictions of the defendant as been provided to the defense.

## **OTHER RELIEF**

17. Defendant Yusef Green wishes to reserve the right to make such other and further motions as may be appropriate and necessary.

                                                  JOYCE C. LONDON

Sworn to before me
this 11th day of March, 2008

NOTARY PUBLIC

Approved: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         THOMAS G. A. BROWN
         Assistant United States Attorney

Before: THE HONORABLE KEVIN N. FOX
        United States Magistrate Judge
        Southern District of New York

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

YUSEF GREEN,

            Defendant.

**COMPLAINT**

Violation of
21 U.S.C. §§ 812,
841(a)(1),
841(b)(1)(C);
18 U.S.C. § 2

COUNTY OF OFFENSE:
BRONX

- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    SHAWN R. MULLEN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

    1.  On or about March 15, 2007, in the Southern District of New York, YUSEF GREEN, the defendant, unlawfully, intentionally and knowingly did distribute and possess with intent to distribute a controlled substance, to wit, Oxycodone, commonly known as "OxyContin," a Schedule II controlled substance.

(Title 21, United States Code,
Sections 812, 841(a)(1) and 841(b)(1)(C);
Title 18 United States Code, Section 2.)

### COUNT TWO

    2.  On or about March 15, 2007, in the Southern District of New York, YUSEF GREEN, the defendant, unlawfully, intentionally and knowingly did distribute and possess with intent to distribute a controlled substance, to wit, Hydromorphone, commonly known as "Dilaudid," a Schedule II controlled substance.

(Title 21, United States Code,
Sections 812, 841(a)(1) and 841(b)(1)(C);
Title 18 United States Code, Section 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3. I am a Special Agent with the FBI. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, and conversations that I have had with other law enforcement agents and individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based on my training and experience, including conversations I have with special agents of the Drug Enforcement Administration who specialize in the investigation of diversion of legitimately-manufactured pharmaceuticals to unauthorized individuals, I am familiar with various types of legitimate controlled substances in Schedule II of 21 U.S.C. § 812 that are often distributed illegally. As relevant to this case:

   a. Hydromorphone, commonly known as "Dilaudid," is a semi-synthetic opioid that is refined from morphine and is included as a Schedule II controlled substance. Dilaudid is typically prescribed to relieve moderate to severe pain. However, there is an illegal market for Dilaudid because it is frequently used as a substitute for heroin by addicts.

   b. Oxycodone, commonly known as "OxyContin," is a semi-synthetic opioid analgesic that is similar to codeine and is included as a Schedule II controlled substance. OxyContin is prescribed to relieve moderate to severe pain, but it can result in addiction similar to morphine. There is an illegal market for OxyContin as a substitute for, or adjunct to, other illegal narcotics.

5. I have spoken with two officers of the New York Police Department ("Officer 1" and "Officer 2"). Based on my conversations with those officers, I have learned the following:

a. Early on the morning of March 15, 2007, Officer 1 and Officer 2, along with another police officer (collectively, the "police officers"), were on duty in an unmarked police vehicle that was parked in the vicinity of Sin City, a strip club located at 2520 Park Avenue in the Bronx, New York.

b. At or around 4:30 a.m., on or about March 15, 2007, Officer 1 and Officer 2 observed a Mercedes Benz sedan (the "Mercedes") double-parked on the street outside of Sin City. After remaining there for approximately 10 minutes, the Mercedes abruptly drove off at a high rate of speed, making a wide, high-speed, right-hand turn onto 138th Street.

c. The police officers followed the Mercedes in their vehicle and activated the vehicle's lights and siren. After traveling approximately two to three more blocks, the Mercedes came to a stop in the middle of the street.

d. The police officers got out of their vehicle, approached the Mercedes, and Officer 1 and Officer 2 spoke to the driver, who was identified as YUSEF GREEN, the defendant. Officer 1 and Officer 2 observed that GREEN had bloodshot eyes, slurred his speech, and smelled of alcohol. Upon being directed to get out of the Mercedes, GREEN also appeared to be unsteady on his feet and needed to be assisted by Officer 1.

e. At that point, GREEN was placed under arrest for driving under the influence of alcohol and was put in the police officers' vehicle for transport by Officer 1 and the third officer to the 40th Precinct.

f. At or around the time GREEN was arrested, he stated to Officer 1 and Officer 2 that his sister was a police officer and that, as a result, he expected to be released without being charged.

g. Following the arrest of GREEN, Officer 2 performed a brief search of the Mercedes. During the search, Officer 2 observed (i) a large bottle containing what was later determined to be approximately 209 OxyContin pills behind the driver's seat and (ii) a large quantity of cash, later determined to total approximately $36,600, in rubber-banded bundles in the rear driver's side storage compartment.

h. Officer 2 then drove the Mercedes to the 40th Precinct, where he continued to search the Mercedes. During the inventory search of the Mercedes, Officer 2 found, among other

-3-

things: (i) a wallet that contained, among other things, photographic identification cards in different names bearing the likeness of GREEN; (ii) a prescription for OxyContin in a name other than GREEN's; and (iii) receipts for OxyContin and Dilaudid prescriptions in various names, including one that corresponded to one of the above-described photographic identification cards.

6. I have reviewed a New York Police Department laboratory report related to the 209 pills seized from the Mercedes that YUSEF GREEN, the defendant, was driving. According to the report, a sample of 14 pills was tested and confirmed to contain Oxycodone, the active ingredient in OxyContin.

7. I have also reviewed the Dilaudid and OxyContin prescriptions and prescription receipts that were seized from the Mercedes that YUSEF GREEN, the defendant, was driving. Based on my review, I have learned that there were approximately five prescription receipts for Dilaudid 4 milligram tablets, in amounts ranging from approximately 100 to approximately 360 tablets; and approximately 8 prescriptions or prescription receipts for OxyContin 80 milligram tablets, in amounts ranging from approximately 60 to approximately 180 tablets. The prescriptions were written by various doctors in the New York City metropolitan area, and had been filled at various pharmacies in the same geographic area. Thus, in total, GREEN possessed, in addition to the 209 OxyContin tablets, prescription or prescription receipts for approximately 1,230 OxyContin 80 milligram tablets, and prescription receipts for approximately 1,300 Dilaudid 4 milligram tablets.

WHEREFORE, deponent prays that a warrant be issued for the arrest of YUSEF GREEN, the defendant, and that he be imprisoned, or bailed, as the case may be.

_____
SHAWN R. MULLEN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
9th day of August, 2007

s/ Kevin Nathaniel Fox
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

-4-

KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription  02/05/2008

**REDACTED**

███████ advised of the following regarding the events of the morning of 03/15/2007:

███████ was posted in the vicinity of the parking lot of SIN CITY, a club located at 2520 Park Avenue, Bronx, New York. ███████ observed a red Mercedes-Benz blocking vehicular traffic in front of SIN CITY. The vehicle then departed the location and turned right on 138th Street. The vehicle was pulled over and ███████, along with fellow officers ███████ and ███████, exited their vehicle and approached the Mercedes-Benz. Upon the officers' speaking with the driver, ███████ observed that the driver, later determined to be YUSEF GREEN, had blood shot eyes and slurred speech.

After being stopped, GREEN was apologetic, and mentioned that he was a transit worker, and that he had a family member who was an NYPD officer. GREEN was then arrested for driving under the influence (DUI).

███████████████████████████████████████████████████

Investigation on  02/04/2008  at  New York, New York

File # ███████████████                            Date dictated

by ███████████████

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

(718) 589-4716
FAX

renewed statement
notice

BRONX SUPREME COURT
CRIMINAL DIVISION

2007BX017478

multiple I.D.

PT. B
3/20 $100 K
100
OVT surety

THE PEOPLE OF THE STATE OF NEW YORK

v.

STATE OF NEW YORK

COUNTY OF THE BRONX

1. YUSEF GREEN M/42

Defendant

PO LATRAVIO WELLS of 40 PCT, Shield# 06676, states that on or about March 15, 2007 at approximately 4:30 AM at 2520 PARK AVENUE, County of the Bronx, State of New York,

THE DEFENDANT COMMITTED THE OFFENSES OF:
1 (F) P.L. 220.16(1)         Criminal Possession of a Controlled Substance 3^
2 (F) P.L. 220.16(12)        Criminal Possession of a Controlled Substance 3^
3 (F) P.L. 200.03            Bribery 2^
4 (F) P.L. 200.00            Bribery 3^
~~5 (M) P.L. 195.05           Obstructing Governmental Administration 2^~~
6 (M) V.T.L. 1192(3)         Operating a Motor Vehicle While Under the Influence of Alcohol
7 (V) V.T.L. 1192(1)         Operating a Motor Vehicle While Under the Influence of Alcohol
8 (V) V.T.L. 1180            Violation of Maximum Speed Limits

IN THAT THE DEFENDANT DID: knowingly and unlawfully possess a narcotic drug with intent to sell it; knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more.; confer, or offer or agree to confer, a benefit valued in excess of ten thousand dollars upon a public servant upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant would thereby be influenced; confer, or offer or agree to confer a benefit upon a public servant, upon an agreement or understanding that such public servant's vote, opinion, judgment, action, decision or exercise of discretion as a public servant would thereby be influenced; intentionally obstruct, impair or pervert the administration of law or other governmental function or prevented or attempted to prevent a public servant from performing an official function, by means of intimidation, physical force or interfernce, or by means of an independently unlawful act, or by means of interfering, whether or not physical force was involved, with radio, telephone, television or other telecommunications owned or operated by the state or a county, city, town, village, fire district or emergency medical service; operate a motor vehicle while in an intoxicated condition,; operate a motor vehicle while his ability to operate that motor vehicle was impaired by the consumption of alcohol and operate a motor vehicle



at a speed greater than was reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing..

THE GROUNDS FOR THE DEPONENT'S BELIEF ARE AS FOLLOWS:

*[handwritten: 138th & Grand Concourse - 3:30 A.M. Just pulled A over. Said speeding. Detected alcohol on breath. Did some previously]*

Deponent states that, at the above time and place, deponent observed defendant to be behind the steering wheel 2003 MERCEDEZ-BENZ (LICENSE PLATE # 2211917K) with the keys in the ignition and the engine on traveling in excess of the 30 mile per hour speed limit speed. Deponent further states that defendant was double parked outside of the Club Sin City and was about to be summoned by deponent when he took off at a high rate of speed with at least twenty 20 people in the immediate area walking to there cars.

Deponent further states that she is highway qualified by the City of New York in estimating speed and defendant quickly excellerated out of the SIN CITY Club at approximately forty five (45) miles per hour.

Deponent further states that when defendant was stopped two blocks later, he had a strong smell of alcoholic beverage, bloodshot and watery eyes, slurred speech to the point of incoherence, had trouble with motor skills like finding his documents, and when asked to get out of the car fell into deponent's arms.

Deponent further states that deponent was present at the 45 precinct when defendant refused to take a chemical breath test.

Deponent further states that defendant's vehicle was vouchered and an administrative search was done of said vehicle and deponent observed 208 OXYCODONE pills, in that said pills had said name on them, weighing in excess of 1/2 onces in a compartment in the passengers seat of defendant's vehicle. *[margin: Serena Alvarado / prescription / name on bottle ✓ address]*

Deponent further states that said pills are both a narcotic and a controlled substance.

Deponent further states that deponent observed thirty six thousand dollars (36,000) in cash in a compartment in the passengers side seat of defendant's car. *[handwritten: TRANSIT MTA - car equipment - 36K and rewards 8 / $36K / THE PO 132 & 5st / One]*

Deponent is informed by OFFICER VANWEDDGER (SHIELD 3124) of the 40 precinct that after being mirandized on tape, defendant stated (in sum and substance) KEEP EVERYTHIN AND MAKE IT GO AWAY. *[margin: KEPV (over / mark / go 3 / 3 rd parties]*

Deponent further states that defendant had multiple indentifications, social secrity cards, and credit cards with different names on them. *[handwritten: A's sister - Sgt. PSA 8. A/o said he contacted her and he knows her for a yrs. He also said they were going take her gun & badge away and be on desk duty. Internal affairs on his to her job. what to u want to do about the $. I don't care about the $, I'm just concerned about her. I'm not worried]*

FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE
AS A CLASS A MISDEMEANOR PURSUANT TO P.L. 210.45

_____
DATE and TIME                    SIGNATURE

8/16/07 0150

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

        -against-                                **DEFENDANT'S AFFIDAVIT**
                                                07 Cr 1041 (LTS)

YUSEF GREEN,

        Defendant.
------------------------------------------------------------x
STATE OF NEW YORK    )
                                  ) ss.:
COUNTY OF KINGS     )

        YUSEF GREEN, being duly sworn, hereby deposes and says:

1. I am the defendant in the above-captioned matter.

2. On the night in question, I exited the Bruckner Expressway in the Bronx and drove along the service road and various local streets intending to get back on the Bruckner Expressway.

3. En route, I turned onto the street where Sin City is located.

4. I drove past Sin City to the end of the block and stopped at the stop sign. I intended to turn left and get back on the Bruckner Expressway after it became the Major Deegan Expressway.

5. While stopped at the stop sign, I noticed the flashing lights and the sirens of a police vehicle coming up behind me so I turned right and pulled over.

6. When the officers approached my car, I asked why I was being stopped and I was told that I had stopped for too long a period at the stop sign.

7.      I had not consumed any alcohol that evening.

                                                              _____
                                                              YUSEF GREEN