UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

       -against-                                      07 Cr 1041 (LTS)

YUSEF GREEN,

       Defendant.
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT YUSEF GREEN'S PRE-TRIAL MOTIONS**

**PRELIMINARY STATEMENT**

     Under Indictment No 07 Cr. 1041 (LTS), the grand jury of the Southern District of New York has charged Yusef Green in Counts One and Two of a two-count indictment. Count One charges that on or about March 15, 2007, the defendant distributed and possessed with intent to distribute a controlled substance, to wit, approximately 1,400 80- milligram tablets of Oxycondone, commonly known as "Oxycontin", a Schedule II controlled substance in violation of Title 21, United States Code, Sections 812, 841((a)(1), 841(b)(1)© and Title 18 United States Code, Section 2. Count Two charges that on or about March 15, 2007, the defendant distributed and possessed with intent to distribute a controlled substance, to wit approximately 1,300 4-milligram tablets of Hydromorphone, commonly known as "Dilaudid", a Schedule II controlled substance in violation of Title 21, United States Code, Sections 812, 841((a)(1), 841(b)(1)© and Title 18 United States Code, Section 2. The Indictment also contains a forfeiture allegation..

     This Memorandum of Law is submitted in support of defendant Yusef Green's motions for (I) an order pursuant to Rule 12(b)(3)(A) of the Federal Rules of Criminal Procedure suppressing any and all evidence seized as a result of the search of Green's car on the grounds

that there was no reasonable suspicion to stop Green; (ii) an order pursuant to Rule 16(a)(C)(1) of the Federal Rules of Criminal Procedure directing the government to disclose any and all prior immoral or illegal acts and/or criminal convictions of the defendant which the government would seek to introduce against the defendant at least thirty days prior to trial so that the defendant may move to preclude the introduction of such evidence in accordance with Rules 403 and 404(b) of the Federal Rules of Evidence; and (iii) an order permitting defendant Green to make such other and further motions as may be appropriate and necessary.

## STATEMENT OF RELEVANT FACTS

The facts relevant to the instant motions are set forth in the accompanying Attorney's Affidavit and Defendant's Affidavit, both executed on March 10, 2008   These facts are also incorporated into the relevant legal arguments, *infra*.

## ARGUMENT

## POINT I

### THE EVIDENCE SEIZED FROM THE SEARCH OF DEFENDANT YUSEF GREEN'S CAR MUST BE SUPPRESSED BECAUSE THE ARRESTING OFFICERS LACKED REASONABLE SUSPICION FOR THE STOP OF GREEN'S VEHICLE

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The stop of an automobile, "even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Accordingly, "such stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States*

*v. Scopo*, 19 F.3d 777, 781 (2d Cir.1994). Where the stop leads to an arrest, a two-step inquiry is required: whether the stop was supported by "reasonable suspicion," and if so, whether the arrest was supported by probable cause. *United States v. Perea*, 986 F.2d 633, 644 (2d Cir.1993).

| | |
|---|---|
| **A.** | **The Parking and/or Traffic Violations Alleged as the Basis for the Stop by the Arresting Officers were Fabricated so as to Justify a Basis for the Seizure of the Defendant; At no Time Prior to Defendant's Seizure Did the Officers Have the Authority To Effect an Arrest.** |

Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. Id. Thus, an automobile stop is authorized when the police reasonably believe that "a [traffic] offense has been or is being committed." *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1077 (1988). In the instant case, there was neither probable cause nor reasonable suspicion to stop and arrest Defendant Yusef Green ("Green") as the officers failed to observe him violating the traffic laws.

After being pulled over by the arresting officers, Green was informed that he was pulled over because he had stopped his vehicle for too long a period at the stop sign. (See, Defendant's Affidavit dated March 10, 2008 ("Def Aff").  This alleged act is not codified as an offense under the Vehicle and Traffic Laws of the State of New York

As set forth in Green's Affidavit, he was never double-parked or running from the issuance of a Summons as alleged by the arresting officers, *see infra*. In fact, the Green had exited the Bruckner Expressway in the Bronx to avoid a traffic tie-up, and then traveled along the

service road and local streets eventually turning on to Park Avenue in order to get back on the Bruckner Expressway after it had turned into the Major Deegan Expressway. He proceeded past Sin City to the stop sign at the end of the block. While stopped at this stop sign, he observed the arresting officers in a vehicle behind him with their sirens blaring and their lights flashing. So instead of turning left to re-enter the Major Deegan Expressway, he made a right turn and pulled over to the side of the road. At this point the arresting officers effected their stop and seizure. Thus, any allegation that the Green may have been speeding at a rate of forty-five (45) miles an hour after he was at a full and complete stop several feet prior to his seizure is simply not accurate. Even the arresting officers under their statements of the facts have acknowledged that Green was at a complete stop immediately before the alleged speeding violation (i.e. he was allegedly double parked outside the Sin City club), but nevertheless they have insisted on the fact that Green was speeding only several feet later. This is a physical and scientific impossibility.

      Moreover, no calibrated radar gun was present at the scene, nor used to establish the speed of the vehicle. The speed herein was determined solely by a hunch, guess or surmise on the part of the arresting officer who was "highway qualified." Lastly, Green was never issued a ticket for double parking, reckless driving, speeding, or driving at a speed that exceeds the apposite limit.

      It is quite clear from the inconsistencies within the facts as submitted by law enforcement officers that these alleged violations were a mere afterthought, constitutionally tailored to set forth a reason needed to substantiate the initial stop of Green. In fact, Green did not commit any traffic infraction. For this reason, the versions of the events, as set forth by the arresting officers, should not be given any weight or relied upon by this Court as the grounds or the basis for

reasonable suspicion to stop Green in the instant matter.

It is submitted however, that a different set of facts serves as the underpinnings of Green's seizure. The arresting officers saw Green, a black-male of young age, driving a red Mercedes-Benz two-seater vehicle, in the early morning hours, in an uninviting section of the Bronx.[1] They see this dark-skinned man in a luxury automobile, in a dilapidated neighborhood and their suspicion is immediately aroused. Albeit, if we were in a suburb, and a Caucasian man was stopped for too long a period at a stop sign, behind the wheel of the same luxury car, he would simply be lost and in need of directions. However, when determining that Green had stopped for too long at this intersection in his luxury car, a suspicion was immediately sparked in the minds of these arresting officers that Green was up to something criminal.

Two different versions of the events of that evening have been propounded and/or advanced by the officers at the scene of Green's seizure. The inherent contradictions set forth therein manifest that no basis for a stop had ever existed and no basis was ever proffered until after Green's arrest.

In *United States v. Scopo*, the Second Circuit faced the issue of whether an arrest based upon an observed traffic violation, violated the Fourth Amendment because it was based on pretext. *United States v. Scopo* 19 F.3d 777, 780 (2d Cir.1994). The Court in *Scopo* noted that traffic stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct. Id. at 781. In *Scopo*, the traffic violation at issue was

---

[1] The seizure of this Defendant, in this situation, by the Police, is not uncommon. See, Michael A. Fletcher, Driven to Extremes: Black Men Take Steps to Avoid Police Stops, Wash. Post, Mar. 29, 1996, at A1; Deval Patrick, Have Americans Forgotten Who They Are?, L.A. Times, Sept. 2, 1996, at B5 ("I still get stopped if I'm driving a nice car in the 'wrong' neighborhood."). Columbia Human Rights Law Review, RACE AND PRETEXTUAL TRAFFIC STOPS: AN EXPANDED ROLE FOR CIVILIAN REVIEW BOARD, 28 CLMHRLR 551 (1997).

relatively minor, a failure to signal while changing lanes. Id. The Court nevertheless held that the officers acted within their authority in stopping Scopo for violating the traffic law because **"[w]hen an officer observes a traffic offense" he has probable cause to stop the driver of the vehicle.** Id. at 782 (citation omitted).

Thus, "the proper inquiry is simply whether the officers acted within the scope of their authority in making the stop." *Waksman v. Cohen*, Not Reported in F.Supp.2d, 1998 WL 690091 (S.D.N.Y. 1998). This requires that "[a] traffic violation [had to have] occurred or was occurring in the officer's presence, and [thus] authorized by state or municipal law to effect a custodial arrest for the particular offense," otherwise any pretext set forth is insufficient. Id. at 784.

Here, unlike *Scopo*, the arresting officers have presented different versions that are contradictory, and impossible under the circumstances. Defendant Green avers that **based upon the actual events, the arresting officers never observed him committing a traffic violation;** stopping at a stop sign for "too long," as they advised Green, is not a traffic violation. Thus, pursuant to *Scopo*, the officers lacked authority to initially seize Green regardless of their pretext. As a result, all fruits garnered as a result of this illegal detention must be suppressed.

In the alternative, a suppression hearing should be ordered. See, *U.S. v. Chimurenga*, Not Reported in F.Supp., 1985 WL 546 (S.D.N.Y. 1985) (*requiring* a suppression hearing to be conducted where there is a discrepancy between the affidavit of the arresting officer and the police record).

**B.    The Alleged Act of Defendant Double-Parking his Car, Without More, Does not Set Forth an Articulable Basis Justifying an Investigatory Stop, Requiring Suppression of All Fruits Acquired Therefrom.**

In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that certain seizures are justifiable under the Fourth Amendment if there is an articulable suspicion that a person has committed or is about to commit a crime. Reasonable suspicion is a lesser standard than probable cause.

Specifically, police officers may make a "brief, investigatory stop" of an automobile when they have a "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). While "reasonable suspicion" is less demanding than probable cause, "**a minimum level of objective justification" is required, and the officers "must be able to articulate more than an inchoate and unparticularized suspicion or hunch" of criminal activity**." Id. at 123-24 (*quoting Terry v. Ohio*, 392 U.S. 1 (1968)). Whether police officers had a reasonable suspicion that criminal activity was afoot is determined by examining the "totality of the circumstances." *Diamondstone v. Macaluso*, 148 F.3d 113, 124 (2d Cir.1998).

This standard of reasonable suspicion, utilized by our Courts over the years, requires specific and articulable facts of **unlawful conduct** or **criminal activity**. *U.S. v. Sokolow*, 490 U.S. 1, 10 (1989); see also, *Scopo*, 19 F.3d at 781.

Thus, this Court is asked to determine whether the factors as set forth by the arresting officers, taken together, provide "a particularized and objective basis for suspecting" the Defendant of a crime. *U.S. v. Bayless*, 201 F.3d 116 (2d Cir. 2000). This standard necessitates, "specificity in the information upon which police action is predicated." *Terry*, 392 U.S. at 21.

Assuming, this Court were to accept the facts as posited by the arresting officers in their sworn statements, these facts, based upon the totality of the circumstances, fail to establish with particularity and specificity that the arresting officers had an articulable basis to believe that criminal activity was afoot, thus suppression of all evidence derived therefrom is required.

Here, the arresting officers' own statements set forth that the vehicle was "blocking vehicular traffic," (see, FBI Form 302, dated February 4, 2008, attached as Exhibit B to the accompanying Attorney's Affidavit). In a different document, the vehicles is said to be "double-parked." (See, Federal Complaint, 07 MAG 1311, dated August 9, 2007, at ¶ 4(b), attached to the accompanying Attorney's Affidavit as Exhibit A.). Without more, this alone does not amount to criminal activity in the State of New York. See, 34 RRCNY § 4-08 (f)(1) ("double-parking," is classified as parking violation and not a crime). The alleged offense is not even punishable by points, requiring only a fine to be paid. 15 N.Y.C.R.R.131.3 (b)(7)(iv).

This alleged parking violation does not entitle the arresting officers to then pull Green over and seize him after he has put the car in motion and left the scene. In the State of New York, police officers are without authority to chase after and seize a parking violator for such an offense. See, *Breland v. Gray*, 2 Misc.2d 15, 37 N.Y.S.2d 291 (N.Y. Sup. 1942).

Although one arresting officer further claims that Green was "about to be summoned…when he took off," (see, Bronx Supreme Court Complaint, 2007 at 2, attached to the accompanying Attorney's Affidavit as Exhibit C,),it is unlikely that the two arresting officers were parked in front of the Sin City nightclub at 4:30 in the morning in an unmarked police car for the purpose of issuing parking tickets to the patrons therein. (See, Federal Complaint, at ¶¶ 4(a)-(b)). Simply stated these officers were not issuing parking tickets, nor was Green "about to

8

be summoned."

Moreover, in the Federal complaint it is alleged that the vehicle drove off "abruptly." However, there is no mention whatsoever of this driving, abruptly or otherwise, in the FBI Form 302. (See, Exhibit B which is attached to the accompanying Attorney's Affidavit.). The allegation of driving abruptly is irreconcilable with the federal agent's FBI-Form 302 Report. Lastly, by admission of the officers themselves, it is clear that within the space/distance permitted on the street in question, at no time was Green able to speed, *see supra*.

Thus, the officers are left with the only articulable basis for the stop - namely that Green's car was left double-parked outside of a night club. **Thereby, the only reason for the seizure of Green was to ascertain his identity for purposes of issuing him a parking ticket.** The United States Supreme Court has held that a seizure effected for the sole purpose of attaining the identity of a defendant, without more, is wholly insufficient to fulfill even the minimal standard of reasonable suspicion. *Brown v. Texas*, 443 U.S. 47 (1979).

In *Brown*, two police officers approached Mr. Brown in an alley in a part of town where drug transactions were known to occur. Id. at 48-49. The officers testified that they stopped the defendant because they had never seen the defendant in that area before, and that the situation "looked suspicious." Id. at 49. The officers asked Mr. Brown to identify himself and explain what he was doing there. Id. Mr. Brown refused to identify himself and asserted the officers had no right to stop him. Id. at 49. As such, the officers arrested him for violating a Texas statute, which provides: "[a] person commits an **offense** if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information." *Brown*, 443 U.S. at 49.

The United States Supreme Court held the seizure of the Defendant was in violation of his Fourth Amendment rights because **<u>the officers lacked any basis for suspecting Mr. Brown of misconduct, and had stopped him only in order to ascertain his identity</u>**. Id. at 49.

What was so aptly stated in *Brown* is clearly applicable to the instant matter: "The flaw in the State's case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that [the Defendant] was involved in criminal conduct." Id. at 51-52. According to the Officer's in the instant case, their basis for the stop, in sum, was that the Defendant double-parked his car and thereafter drove away. This activity, even if qualifying as vaguely suspicious, will not justify an investigatory stop. Id. at 49.

Similarly, in *United States v. Davis*, 94 F.3d 1465 (10th Cir.1996), the defendant was stopped in a high crime area after he made eye contact with the officer, exited the car in which he was seated, and began walking toward an adjacent store. The Tenth Circuit found that the stop was unjustified, reasoning that the defendant's "actions in exiting the car, making and then breaking eye contact with the officers, and then walking away from the officers ... do not furnish the basis for a valid Terry stop. [These actions] do not provide the officer with 'a particularized and objective basis for suspecting the person stopped of criminal activity,'...." Id. at 1468.

Thus, the mere fact that Green purportedly entered his car and drove away from the officers, with or without acknowledging their presence, does not set forth an articulable basis within which to justify any stop, even one based upon mere reasonable suspicion.

Conversely, the arresting officers do not identify with particularity a single act of Green which would arise to a finding of criminality upon which their seizure of Green was predicated. It is not alleged that Green engaged in a furtive movement, evasive tactics, a hand to hand, any

previous interaction with Green of knowing criminality, a tip connecting Green to criminal activity, a bulge in Green's waistband, nor any other indicia that **criminal activity was afoot.**

The requirement of reasonable suspicion cannot be fulfilled in the instant case, requiring suppression of all evidence obtained as a result of the officers' search and seizure of Green. The statements of the arresting officers vary and are wholly inconsistent with one another. After eliminating the facts which contain these inherent inconsistencies, the Court is left with a set of facts which, if accepted as true, do not establish the specific and particularized showing of criminality, required for a finding of reasonable suspicion.  Defendant Green's statement of facts further undermine any justification for the stop.

Accordingly, the evidence seized from Green's person and from the search of his car must be suppressed.  In the alternative, a hearing should be held with respect to the disputed facts.

## POINT II

### THE GOVERNMENT SHOULD BE ORDERED TO DISCLOSE ANY 404(b) EVIDENCE AT LEAST 30 DAYS PRIOR TO TRIAL

The government has yet to inform the defendant whether it intends to utilize Rule 404(b) evidence.  Based on discovery provided pursuant to Rule 16 of the Federal Rules of Criminal Procedure, namely Green's rap sheet, there is a notation indicting that Green has a prior conviction for possession of a firearm by a convicted felon.  Upon information and belief, this prior conviction record is erroneous, as Green has never received a conviction for possession of a firearm by a convicted felon.

The discovery provided to date by the Government contains documentation concerning

purported criminal conduct related to the instant case. But no other information regarding prior immoral or illegal acts or criminal convictions of the defendant has been provided to the defense.

Federal Rule of Evidence 404 excludes, except in limited circumstances, evidence of other crimes or bad acts. Federal Rule of Evidence 404 excludes, except in limited circumstances, evidence of other crimes or bad acts. The Rule provides, in pertinent part:

> (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except [inapplicable]:

. . .

> (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

*Id.* Upon request of the defendant, the government "shall provide reasonable notice in advance of trial" of the general nature of evidence it intends to present under Rule 404(b). Fed. R. Evid. 404(b); *United States v. Trochelman*, 1999 WL 294992 at *4 (S.D.N.Y. May 11, 1999).

As such, the defendant requests that the Court require the government to provide him with notice of its intent to introduce any evidence pursuant to Rule 404(b) at a reasonable time before trial, and suggest a period of at least 30 days. Given the highly prejudicial nature of Rule 404(b) evidence, ample time must be given so that the defendant can evaluate and fully investigate any such evidence that the government seeks to offer. Depending on the nature of any such evidence, the defendant may need to locate witnesses, gather documents, and/or retain experts to rebut the evidence. In addition, the defendant must have an opportunity to submit, prior to trial, motions *in limine* challenging the admissibility of any such evidence that the

government seeks to offer. Requiring the disclosure of the Rule 404(b) evidence at least 30 days prior to trial will ensure that the defendant has an adequate opportunity to submit meaningful responses to the government's offer.

As such, for all the reasons set forth above, it is respectfully submitted that this Court should order to the government to disclose any evidence it intends to offer under Rule 404(b) at least 30 days prior to trial because "[w]hile notice is typically provided no more than two to three weeks before trial, a longer period is appropriate [where there is] absence of any threat to the safety of prospective witnesses and the . . . Rule 404(b) evidence [is important to the] action." *United States v. Nachamie*, 91 F.Supp.2d 565, 577 (S.D.N.Y. 2000).

## CONCLUSION

For all the reasons set forth herein, the relief requested should be granted.

Dated: New York, New York
March 11, 2008

                                                  Respectfully submitted,

                                                  JOYCE C. LONDON, ESQ.
                                                  20 Vesey Street, Suite 400
                                                  New York, NY 10007
                                                  Tel: (212): 964-3700

                                                  and

                                    VALERIE VAN LEER GREENBERG
                                                  132 Nassau Street
                                                  New York, New York 10038
                                                  Tel: (212) 962-1596

                                                  *Attorneys for Defendant*
                                                  YUSEF GREEN