UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
                              :

UNITED STATES OF AMERICA      :

          - v. -        :   07 Cr. 1041 (LTS)
                              :

YUSEF GREEN,                :

          Defendant.    :

- - - - - - - - - - - - - - - - - x

GOVERNMENT'S MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANT'S PRE-TRIAL MOTIONS

                                   MICHAEL J. GARCIA
                                   United States Attorney for the
                                   Southern District of New York

                                   Attorney for the United States
                                      of America

THOMAS G. A. BROWN
Assistant United States Attorney

    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :
                                    :
         - v. -                     :    07 Cr. 1041 (LTS)
                                    :
YUSEF GREEN,                        :
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - - x


     The Government respectfully submits this Memorandum of Law

to respond to the pre-trial motions of defendant Yusef Green, who

has moved for suppression of evidence seized from his vehicle

following his arrest on March 15, 2007, as well as advance

disclosure of "bad acts" evidence.  The Government consents to

provide notice 30 days before trial of any evidence it intends to

offer pursuant to Rule 404(b) of the Federal Rules of Criminal

Procedure.  For the reasons discussed below, Green's suppression

claims should be denied following a hearing, to which the

government consents.

### BACKGROUND[1]

### <u>Statement of Facts</u>

     As set forth in the criminal complaint filed in this case,

07 mag. 1311, Yusef Green was arrested by officers of the New

---

[1]     The description of the charges contained herein is
simply a summary and does not purport to describe the entirety of
the Government's proof.  This description is meant as a guide to
the Court and is not intended in any way to bind the Government
or limit its proof at any proceeding or at trial.

York City Police Department in the early morning of March 15, 2007, in the Bronx, New York.  The officers observed Green drive away from Sin City, a strip club, at a high rate of speed and make a high-speed turn onto a nearby street.  Green stopped his vehicle a few blocks later, after the NYPD officers activated their lights and siren.  Upon approaching Green's vehicle, officers observed him to have bloodshot eyes, slurred speech, and to smell of alcohol.  Green was then placed under arrest for driving under the influence of alcohol.

Incident to Green's arrest, an NYPD officer performed a brief search of Green's vehicle and discovered a large bottle containing what turned out to be 209 80-milligram OxyContin[2] pills and a large quantity of cash (later determined to be approximately $36,600).  During a subsequent inventory search of Green's vehicle at a police precinct house, NYPD officers discovered, among other things, identification cards bearing Green's photograph but issued under names different than his own, a prescription for OxyContin in a name other than Green, and receipts for OxyContin and Dilaudid[3] in various people's names,

_____

[2]    Oxycodone, commonly known as "OxyContin," is a powerful prescription painkiller that can result in addiction similar to morphine.  A Schedule II controlled substance, "OxyContin" is sold on the street as a substitute for other, illegal narcotics.

[3]    Hydromorphone, commonly known as "Dilaudid," is also a powerful prescription painkiller.  Like OxyContin, it is a Schedule II controlled substance, and it is commonly sold on the
(continued...)

including one that corresponded to one of the identification cards bearing Green's photograph.

## Indictment and Government Discovery

On November 14, 2007, an Indictment, 07 Cr. 1041 (LTS), was filed in two counts.  Count One charges Green with distributing and possessing with intent to distribute approximately at least 1,400 80-milligram tablets of OxyContin, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C); and 18 U.S.C. § 2. Count Two charges Green with attempting to distribute and possess with intent to distribute at least approximately 1,300 4-milligram tablets of Dilaudid, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 846; and 18 U.S.C. § 2.

The Government has produced discovery to the defendant in compliance with Rule 16 of the Federal Rules of Criminal Procedure.  This discovery includes, among other things, a prisoner medical release form for Green; reports concerning Green's March 15, 2007 arrest and subsequent attempted testing for intoxication; a videotape of Green in which he refused to take an intoxication test following his March 15, 2007 arrest; copies of various ID's, a prescription, and prescription receipts found in Green's vehicle following his March 15, 2007 arrest; an NYPD laboratory report concerning the seized OxyContin pills

---

[3](...continued)
street as a substitute for heroin.

seized following his March 15, 2007 arrest; New York City Transit employment records for Green; purchase records for various vehicles; surveillance video; records reflecting prescriptions for and purchase of OxyContin and Dilaudid in Green's name at various pharmacies around New York City; recordings of prison telephone calls made by Green; a tape recording of a meeting between Green and officers posing as corrupt officers, after Green had allegedly attempted to bribe one of them following his March 15, 2007 arrest; records reflecting Green's pre- and post-March 15, 2007 arrest statements; and patient file records for Green from various doctors.

Additionally, the Government has informed the defendant of tangible evidentiary items currently in its possession, including, among other things, the items seized from his person and vehicle following his arrest by the NYPD on March 15, 2007; items seized from him following his arrest by agents of the Federal Bureau of Investigation in the instant case on August 16, 2007, including an OxyContin pill; as well as patient files, prescriptions for OxyContin and Dilaudid, and records reflecting filled prescriptions for individuals with names other than Green's (although some of these records reflect that the prescriptions were picked up by Green), and has offered those items for defense counsel's inspection upon request.

4

**ARGUMENT**

I.

**GREEN'S MOTION TO SUPPRESS SHOULD BE DENIED FOLLOWING A HEARING**

**A.    Applicable law**

"[A]n ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments. Accordingly, such stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (internal quotation marks and citations omitted).

When evaluating whether "reasonable suspicion" existed to support a Terry stop, the Court must examine the "totality of the circumstances" surrounding it, and "evaluate those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000). The test for "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur," United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995), is a "rather lenient" one, United States v. Santana, 485 F. 2d 365, 368 (2d Cir. 1973), and one the Second Circuit has described as "not a difficult one to satisfy." United States v. Oates, 560 F.2d 45, 63 (2d Cir. 1977). Indeed, the test requires "considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Tehrani, 49

5

F.3d at 58 (citations and internal quotations omitted)).
Notably, the observation by a police officer of even minor
traffic violations is sufficient reason to stop a car.  <u>United
States</u> v. <u>Scopo</u>, 19 F.3d at 782-84 ("When an officer observes a
traffic offense — however minor — he has probable cause to stop
the driver of the vehicle.") (citations and internal quotations
omitted).

**B.    <u>Discussion</u>**

Applying these settled standards, the Government will
demonstrate at a hearing in this matter that NYPD officers were
justified in stopping Green because they had at least a
reasonable suspicion, based on the totality of the circumstances,
that Green was operating his vehicle in violation of traffic
laws.  Accordingly, Green's claim that the results of the post-
arrest search of his vehicle must be suppressed because, as a
preliminary matter, the arresting officers lacked reasonable
suspicion to stop him on March 15, 2007, should be rejected
following a hearing.

## CONCLUSION

For the foregoing reasons, the defendants' pretrial motions should be denied following a hearing, except that the Government consents to provide notice 30 days before trial of any evidence it intends to offer pursuant to Rule 404(b).

Dated:    New York, New York
          March 28, 2008


                         Respectfully submitted,

                         MICHAEL J. GARCIA
                         United States Attorney

By: _____
                         THOMAS G. A. BROWN
                         Assistant United States Attorney
                         Tel. No.: (212) 637-2194


7

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that a copy of the Government's Memorandum of Law in Opposition to defendant's Pretrial Motions filed in this matter was served on:

Joyce C. London, Esq.
Vesey Street, Suite 400
New York, New York 10007

and

Valerie Van Leer-Greenberg, Esq.
132 Nassau Street
New York, New York 10038

by Federal Express on the 28rd day of March, 2008.

THOMAS G. A. BROWN
Assistant U.S. Attorney